IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES MYLES, | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 7704 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | |
| NORTHEAST ILLINOIS REGIONAL COMMUTER RAIL CORP., d/b/a METRA, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff sues Metra for its alleged violations of the Federal Employers' Liability Act ("FELA") and the Federal Railroad Safety Act ("FRSA"). The case is before the Court on defendant's Federal Rule of Civil Procedure 56 motion for summary judgment. For the reasons set forth below, the motion is denied.

**Facts**

In May 1989, Metra hired plaintiff as a carman, and since 1995 he has worked exclusively at Metra's Western Avenue location. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 7-8.) As a carman, plaintiff's duties included "changing out windows, couplers, doors, brake shoes, hoses, and valves, repairing seats and windows, pulling cables and other tasks." (*Id.* ¶ 9.)

In 2005, plaintiff began working in the car wash track area at Western Avenue. (*Id.* ¶ 10.) One of his duties there was to drag a hose outside of the car wash area to pump water out of it. (*Id.* ¶ 14.) When he performed that task, plaintiff would walk out of an overhead door on the west side of Track 1 and drag the hose to a rock/ballast area about ten feet away from the overhead door. (*Id.* ¶ 15.) There is an awning above the overhead door. (*Id.* ¶ 17.)

On February 8, 2010, there was a snow storm that produced 12.6 inches of snow. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2.)

At 7:30 a.m. on February 9, 2010, plaintiff opened the overhead door on Track 1 and did not see any snow fall from the awning over it. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 20, 22.) Sometime between 10:30 and 11:00 a.m., when plaintiff was dragging a hose out through the overhead door, snow fell from the awning, hit plaintiff and knocked him to the ground. (*Id.* ¶¶ 21, 26.) Before this incident, neither plaintiff, nor anyone else as far as plaintiff knows, had complained to Metra management about snow falling from the awning. (*Id.* ¶¶ 31-32.)

Metra's safety rules, a copy of which plaintiff received when he started to work for Metra, require the "[r]emov[al] [of] ice and snow buildup from above doorways, walkways, and other places where it could fall and injure someone." (*Id.* ¶ 36; *id.*, Ex. B, Metra Safety Rules § 100.9.2.) They also state that "all cases of personal injury, while on duty, or on company property must be promptly reported to the proper officer and prescribed form completed before the end of duty and before leaving company property." (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 37.) If an employee fails to timely report an injury, "they are always subject to an investigation." (*Id.* ¶ 35.) In accordance with the rule, plaintiff immediately reported the February 9 incident to his supervisor and completed an injury report. (*Id.* ¶¶ 40-41.)

After receiving medical treatment, plaintiff returned to full-duty work as a carman on June 28, 2010. (*Id.* ¶ 42.)

On Thursday, October 28, 2010, plaintiff's supervisor assigned plaintiff the task of changing adaptors, which put "a lot of stress on [plaintiff's] back." (*Id.* ¶¶ 43, 47.) After doing that work,

plaintiff said his back hurt "ten fold." (*Id.* ¶ 48.) However, he did not report an injury or fill out an injury report on October 28, 2010. (*Id.* ¶ 49.)

On Friday, October 29, 2010, plaintiff worked a full day as a carman and did not report an injury or fill out an injury report. (*Id.* ¶ 50.) However, plaintiff called his doctor and made an appointment for November 1, 2010. (*Id.* ¶ 53.)

On Monday, November 1, 2010, plaintiff told Metra his back hurt and he would not be coming to work because he was going to see his doctor. (*Id.* ¶ 54.) The next day, plaintiff reported the injury to Metra. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 20.)

On November 10, 2010, plaintiff received a letter from Metra instructing him to attend a disciplinary hearing on November 17, 2010 regarding his late injury report. (Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. F, Letter from Metra to Pl. (Nov. 10, 2010).)

On November 12, 2010, plaintiff returned to work on restricted duty. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 56.)

On December 3, 2010, Metra gave plaintiff a three-day-deferred suspension, *i.e.*, a suspension he would not have to serve if he had no other disciplinary action taken against him within two years, for failing to timely report his October 28, 2010 injury. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 25; Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. G, Notice of Discipline.)

On December 16, 2010, Metra assigned plaintiff "to changing out windows on passenger cars in subfreezing temperatures–a job that is never performed in winter." (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 38.)

The next day, plaintiff decided to see his doctor because he did not think he could do the window-changing work. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 58.) Since that day, plaintiff has been off work on "medically disqualified" status. (*Id.* ¶¶ 59-61.)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court views all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I, plaintiff alleges that Metra violated FELA, which provides that "[e]very common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce." 45 U.S.C. § 51. A railroad is liable under FELA only if it was negligent. *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998). Thus, plaintiff must offer evidence of "the common law elements of negligence, including duty, breach, foreseeability, and causation," to defeat Metra's motion on this claim. *Id.* at 1062. "To establish . . . foreseeability, a plaintiff must show that the employer had actual or constructive notice of [the] harmful circumstances." *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005). Metra contends that there is no evidence of foreseeability or causation.

The Court disagrees. With respect to foreseeability, it is undisputed that: (1) there was an awning above the track doorway through which plaintiff was required to drag hoses to empty them; (2) Metra has a safety rule that requires removal of snow from above doorways "and other places where it could fall and injure someone";[1] (3) Metra employees cleaned snow off of other awnings but did not clean snow off of the awning above the track doorway; and (4) the night before plaintiff was injured, there was a snowstorm that produced 12.6 inches of snow.[2] (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 15, 17; *id.*, Ex. B, Metra Safety Rules § 100.9.2; Def.'s Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2; Def.'s LR 56.1(a) Stmt., Ex. B, Garcia Dep. at 34-41.) Taken together, these facts are sufficient to suggest that Metra had constructive notice of the existence and potential hazard of snow on the awning.

Metra fares no better with its challenge to causation. It is true, as Metra points out, that plaintiff did not see snow fall from the awning before or during the incident. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 22-23, 27-28.) But given the undisputed facts that plaintiff walked under an awning that Metra did not clean off the day after a storm deposited more than a foot of snow on it, it is reasonable to infer that the snow that hit plaintiff fell from the awning. Accordingly, Metra's motion for summary judgment on Count I is denied.

---

[1]Citing to *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006), Metra contends that this safety rule is inadmissible. The *Thompson* court said that internal police department rules were inadmissible to prove negligence in a wrongful death action because they "[did] not create a duty to the public at large." *Id.* at 457. Plaintiff does not, however offer the rule as proof of Metra's duty, but as evidence of its knowledge that snow accumulation over a doorway can be hazardous. Thus, *Thompson* does not bar the rule's admission.

[2]Plaintiff also states that Metra employee, Mr. Abdula, told plaintiff that, at Metra's direction, he posted and later removed a sign warning about snow falling from above the track doorway. (*See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 10-12.) This statement, however, is inadmissible hearsay because plaintiff offers it for its truth, *i.e.*, that Metra erected a sign because it was aware of the danger of falling snow.

5

In Count II, plaintiff alleges that Metra retaliated against him for reporting a work-related injury in violation of FRSA. *See* 49 U.S.C. § 20109(4) ("A railroad carrier . . . may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done . . . to notify . . . the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee . . . .") To make a prima facie case on this claim, plaintiff must offer evidence that he engaged in protected activity, Metra knew about it, he suffered an adverse employment action, and the protected activity was a contributing factor to the adverse action. *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009); *see* § 20109(d)(2)(A) (stating that a FRSA retaliation action "shall be governed under the rules and procedures set forth in section 42121(b)); § 42121(b) (discussing the burden-shifting framework); 29 C.F.R. § 1980.104(e)(1) (setting forth the elements of the prima facie case). If plaintiff makes a prima facie case, the burden shifts to Metra to show "by clear and convincing evidence" that it would have taken the same action even absent the protected activity. *Harp*, 558 F.3d at 723 (quotations omitted).

There is no dispute that plaintiff engaged in the protected activity of reporting the October 2010 injury and that Metra knew it. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. D, 11/2/10 Injury Report; *id.*, Ex. E, 11/2/10 Employee Work Status Report.)[3] Moreover, viewed favorably to plaintiff, the

---

[3]Metra objects to plaintiff's Exhibit E as lacking foundation. Given that the document is clearly one of Metra's own records, the Court overrules the objection.

6

record suggests that he suffered adverse actions in the form of a deferred three-day suspension[4] and being assigned to change car windows in the winter.[5] (*See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 25, 38.)

That leaves the final element, a link between the protected activity and the allegedly adverse actions, evidence of which may include:

> "[T]emporal proximity, indications of pretext, inconsistent application of an employer's policies, an employer's shifting explanations for its actions, antagonism or hostility toward a complainant's protected activity, the falsity of an employer's explanation for the adverse action taken, and a change in the employer's attitude toward the complainant after he or she engages in protected activity."

*Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 885 (D. Iowa 2013) (quoting *DeFrancesco v. Union R.R. Co.*, No. 10-114, 2012 WL 694502, at *3 (ARB Feb. 29, 2012).)

Plaintiff admits that Metra requires employees to report an on-the-job injury on the day it occurs, he did not report his October 28, 2010 injury until November 2, 2010, and "changing out windows" was one of the duties of a carman. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 9, 34-37, 49-52; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 20.) Nonetheless, he argues that the last element of the prima facie case is satisfied by the undisputed fact that Metra started investigating his late report within eight days of his submitting it. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. F, Letter from Metra to Pl. (Nov. 10, 2010).) The Seventh Circuit has not decided whether temporal proximity, alone, is sufficient to satisfy the last element of the FRSA. However, decisions from other courts suggest that it is. The

---

[4] Given Metra's admission that "plaintiff was disciplined for [his] late reporting" of the October 2010 injury (Def.'s LR 56.1(a) Stmt. ¶ 55), the Court rejects its argument that the deferred suspension does not constitute an adverse action.

[5] Plaintiff also asserts that there was a third adverse action, Metra's assignment of flagman work to him in November 2010, which he could not do without violating his lifting restriction. (*See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 31-35.) The Court, however, disregards this assertion because it is not supported by the evidence plaintiff cites. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. Ex. I.)

court in *Araujo v. New Jersey Transit Rail Operators, Inc.*, 708 F.3d 152 (3d Cir. 2013), for example, held that defendant's initiation of disciplinary proceedings within a week of plaintiff's report of a work-related injury was sufficient to satisfy the last element, *id.* at 160, given its low evidentiary bar:

> FRSA burden-shifting is much more protective of plaintiff-employees than the *McDonnell Douglas* framework. The plaintiff-employee need only show that his protected activity was a "contributing factor" in the retaliatory discharge or discrimination, not the sole or even predominant cause. *See* 49 U.S.C. § 42121(b)(2)(B)(ii). . . . [A] contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision.

*Id.* at 158 (quotations omitted). A number of other courts followed suit. *See Davis v. Union Pac. R.R. Co.*, No. 5:12-CV-2738, 2014 WL 3499228, at *9 (W.D. La. July 14, 2014) (holding that a one-week lapse between injury report and investigation satisfied the last element of the prima facie case); *Ray*, 971 F. Supp. 2d at 888 ("[T]he Court finds that Plaintiff has demonstrated a genuine issue of material fact as to whether his protected activity was a contributing factor in his termination, both because of the temporal proximity between the report and the subsequent investigation, and because Plaintiff's report is inextricably intertwined with the adverse employment action."); *c.f. Ortiz v. Grand Trunk W. R.R. Co.*, No. 13-13192, 2014 WL 4658762, at *8 (E.D. Mich. Sept. 17, 2014) ("[T]he Court finds that temporal proximity does not support the conclusion that Plaintiff's injury report contributed to his termination, where nearly two years separate the protected activity and the adverse employment decision."); *Kuduk v. BNSF Ry. Co.*, 980 F. Supp. 2d 1092, 1101 (D. Minn. 2013) ("[A] plaintiff cannot establish a prima facie case of retaliation based on temporal proximity alone when the termination occurred two months after the alleged protected conduct."), *aff'd*, 768 F.3d 786 (8th Cir. 2014). The Court agrees with the reasoning of these cases and holds that, at least

8

in the circumstances of this case, temporal proximity is sufficient to satisfy the last element of the FRSA retaliation prima facie case.

Because plaintiff has established a prima facie case, the burden shifts to Metra to show by clear and convincing evidence that it would have taken the same action even absent plaintiff's injury report. Metra says the undisputed fact that any employee who does not timely report an injury is subject to investigation satisfies this burden. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 35.) The investigation, however, is not the adverse action of which plaintiff complains; it is the suspension and the window-changing assignment. Metra offers no evidence that suggests it gave deferred suspensions to other employees under circumstances similar to those in this case or that it was essential, for whatever reason, that plaintiff change out car windows in freezing temperatures. Thus, Metra has not satisfied its burden.

## **Conclusion**

For the reasons set forth above, the Court denies Metra's motion for summary judgment [35]. The parties are ordered to submit their final pretrial order in court on August 18, 2015 at 9:30 a.m.

**SO ORDERED.**                           **ENTERED: July 14, 2015**

_____
**HON. JORGE L. ALONSO**
**United States District Judge**